UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY DEJUAN HOLLIS, #364977,

        Petitioner,

                                    CASE NO. 2:06-CV-12428
v.                                 HONORABLE PAUL D. BORMAN

BLAINE LAFLER,

        Respondent.

                                      /

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner Terry Dejuan Hollis ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony which were imposed following a jury trial in the Wayne County Circuit Court in 2003. Petitioner was sentenced to 20 to 30 years imprisonment on the murder conviction, one to five years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

In his pleadings, Petitioner raises claims concerning prosecutorial misconduct, the denial of his directed verdict motion on a first-degree murder charge, the failure to produce a witness and the admission of her prior testimony, the withholding of exculpatory evidence, a limitation on cross-examination, and the ineffective assistance of trial counsel. Respondent has filed an answer to the petition contending that it should be denied. For the reasons stated, the Court denies the petition.

The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## I.  Facts and Procedural History

Petitioner's convictions arise from the shooting death of Germell King in Detroit, Michigan on April 24, 2002.  The Michigan Court of Appeals set forth the underlying facts of the case, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

> On April 24, 2002, in the area of Delta and Fenelon, an argument ensued between Grenisha King, Latoya Redrick, and Stephanie Hart. At approximately 7:20 to 7:30 p.m., Grenisha's brother, Germell King, and his girlfriend, Joanne Rauti, drove to the area in a white Grand Am to pick up Grenisha. Grenisha and Redrick were arguing with other females on the sidewalk. Defendant came up to the car, and shook Germell's hand. Defendant told Germell that he would not let anything happen to Grenisha. Grenisha informed her brother of what was happening, and Germell told Grenisha to stop arguing. Germell and Rauti then left the area. According to defense witnesses, Germell opened the trunk of the car before leaving the area.

> Germell and Rauti circled the block and returned to the area shortly thereafter. Germell exited the car, told the people in the area to leave Grenisha alone, and again told Grenisha to leave the area. People in the area began to argue with Germell and they began to yell at each other.

> According to prosecution witnesses, Germell did not make any threats to any person, say he was going to kill someone, or say that he had a gun and was going to shoot anyone, but merely told the people to leave Grenisha alone. Germell had turned away from defendant, and defendant shot Germell near the ear toward the back of his head. Additionally, prosecution witnesses Terry Ingram, Grenisha, and Rauti indicated that Germell did not have a weapon in his hands or in his possession. Further, Rauti stated that there had been no weapons in her car prior to the incident. After Germell was shot, he fell to the ground, and defendant left the area running. Subsequently, Germell was placed in Rauti's car and taken to the hospital under a police escort. While at the hospital, the police searched the vehicle; however, no evidence was found.

> According to defense witnesses, Germell had his hand in his pocket, and walked toward defendant. Defense witness Carlton Hart testified that Germell then stated, "When I come back nobody be around my sister or I'm killing everybody...." Carlton

2

admitted he did not see Germell with a gun. Kenneth Clark testified that Germell stated that he would shoot anyone who was around Grenisha, but also indicated he did not see Germell with a gun. Charles Payton testified that Germell stated that he had "eight rounds," and that he would shoot the first person who came near him. Payton further testified that Germell had his hand in his pocket as if he had a gun, and that it looked to him like Germell had a gun.

Defendant testified on his own behalf, and indicated he was in the area that day to sell a gun to help provide for his daughter. Defendant indicated that after Germell left initially, he attempted to stop the argument between Grenisha and Stephanie Hart, but that he was unable to do so. When Germell returned, he stated, "Oh, y'all gon [sic] try to jump on my sister anyway?" Defendant attempted to leave, but Germell stated, "Don't run now, n -----, what's popping." At this point, defendant became alarmed, and saw a gun in Germell's hands. Defendant put his hands in the air and told Germell to "hold on," but Germell threatened to kill defendant. At that point, defendant reached into his shirt, pulled out a gun, and shot Germell one time from approximately three feet away. Defendant stated that he had no intent to kill Germell and that he panicked and ran away. Defendant later indicated that he did not think about where he shot Germell, but rather he just raised the gun and shot. Defendant also stated that Germell pointed the gun at defendant's face, although Germell did not come directly at him with the gun.

The autopsy revealed that Germell died as a result of a single gunshot wound to the head, which was located in the left back area of the head, two inches below the left ear and four inches below the top of the head. Additionally, there was no evidence of close range firing. A .22 caliber shell casing was located at the scene of the incident.

On October 15, 2002, defendant was located by the Detroit Police Department. Defendant informed the officers that his name was Christopher Hicks. Defendant was subsequently identified by the police because his picture was in an internal police file. Defendant admitted to lying to the police about his identity.

*People v. Hollis*, No. 251008, 2005 WL 356261, *1-2 (Mich. Ct. App. Feb. 15, 2005) (unpublished).

At the close of trial, the jury convicted Petitioner of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. The trial court sentenced him to 20 to 30 years imprisonment on the murder conviction, one to five years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims regarding prosecutorial misconduct, the denial of a directed verdict motion on the first-degree murder charge, and the failure to produce a witness and the admission of her prior testimony. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Hollis*, 474 Mich. 855, 702 N.W.2d 581 (2005).

On May 31, 2006, Petitioner filed an initial habeas petition with this Court raising the same three claims presented to the state courts on direct appeal of his convictions. He then moved for a stay so that he could pursue additional claims in the state courts before proceeding on federal habeas review. The Court granted Petitioner's motion and stayed the case.

Petitioner proceeded to file a motion for relief from judgment in the state courts raising claims concerning the withholding of exculpatory evidence, a limitation on cross-examination, and ineffective assistance of trial counsel. The trial court denied the motion finding that Petitioner had failed to establish prejudice so as to satisfy the cause and prejudice requirement for obtaining relief under Michigan Court Rule 6.508(D)(3). *See People v. Hollis*, No. 02-013849 (Wayne Co. Cir. Ct. Jan. 3, 2007) (unpublished). Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hollis*, No. 276211 (Mich. Ct. App. July 26, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Hollis*, 480 Mich. 1006, 742 N.W.2d 361 (2007).

Petitioner then moved to reopen this habeas action and filed an amended petition raising the six claims which were presented to the state courts on direct appeal and collateral review of his

4

convictions. The Court granted Petitioner's motion and reopened the case. Respondent has since filed an answer to the amended petition contending that it should be denied because the claims lack merit and/or are barred by procedural default. Petitioner has filed a reply to that answer.

## II.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Analysis

#### A. Prosecutorial Misconduct

Petitioner first asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by eliciting sympathy for Grenisha King, the victim's sister, vouching for her credibility, and making statements about her which were not based on her testimony. Specifically, Petitioner objects to the following remarks during opening and closing statements:

> ....Grenisha King is young, immature. I'm sure she feels a little bit responsible for what happened on April 24th. And be careful when you review her testimony, hear her testimony, because those factors will play into what kind of witness she'll turn out to be, so keep that in mind as you listen to the testimony on Grenisha King.

> You might find her hard to follow. I'm not going to speak badly of her, but she's not the most educated person in the world...so keep those things in mind as you listen to her testimony. (T-4, p. 6).

> Grenisha King, now I told you to be mindful of her in my opening statement...she doesn't speak like a lot of you folks, maybe you and I, maybe not as educated as you and I, but she came in her best way, whatever way she could, she told you the truth. (T-6, p. 154).

Pet. Brief, pp. 9-10. Respondent contends that this claim is barred by procedural default.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly'

7

states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief on this claim, the court relied upon a state procedural bar – Petitioner's failure to object at trial. *See Hollis*, 2005 WL 356261 at *2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied this claim based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither

alleges nor establishes cause to excuse this procedural default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Nonetheless, Petitioner cannot establish prejudice as this claim lacks merit. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the

defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner asserts that the prosecutor engaged in misconduct by eliciting sympathy for Grenisha King, vouching for her credibility, and making statements about her which were not supported by her testimony.  It is well-established that prosecutorial arguments which "encourage juror identification with crime victims are improper" and that a prosecutor acts improperly when he or she "call on the jury's emotions and fears – rather than the evidence – to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).  It is also improper for a prosecutor to express personal beliefs as to a defendant's guilt or a witness's credibility.  *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002).  Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own.  *See United States v. White*, 58 F. App'x 610, 617-18 (6th Cir. 2003) (citing cases).  Lastly, a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence.  *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005); *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

The Michigan Court of Appeals rejected this claim on plain error review finding that the prosecutor did not attempt to elicit sympathy for the witness and that the prosecutor's comments related to her testimony and credibility.  The court also found that the trial court's instructions dispelled any prejudice.  *See Hollis*, 2005 WL 356261 at *2.  This Court agrees.  The prosecutor's

10

arguments were based upon the testimony and reasonable inferences therefrom. The prosecutor did not attempt to elicit sympathy, express personal beliefs about the case, or indicate special knowledge of guilt. Rather, the prosecutor urged the jury to review the evidence and consider the credibility of the witnesses in deciding the case. As noted, a prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd*, 209 F.3d at 535. Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). Petitioner has not shown that the prosecutor's remarks were improper. Moreover, any potential prejudice was cured by the trial court's instructions that the jury had to follow the law as set forth by the court and that the attorneys' remarks were not evidence. Jurors are presumed to follow those instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has failed to establish that the prosecutor's remarks were improper or, even if improper, that they were so flagrant as to deny him a fair trial.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

11

B.  Denial of the Directed Verdict Motion

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his motion for a directed verdict on the first-degree murder charge.  Respondent contends that this claim lacks merit.

Petitioner is not entitled to relief on this claim.  First, to the extent that Petitioner relies upon state law to support this argument, he fails to state a claim for habeas relief.  It is well-settled that habeas relief may not be granted for alleged violations of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Shacks v. Tessmer*, 9 F. App'x 344, 351 (6th Cir. 2001) (unpublished) (finding no merit in petitioner's claim that the state trial court erred in denying his directed verdict motion on first-degree murder charge based upon alleged state law violations).

Second, clearly established Supreme Court law provides only that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that submission of a charge upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge.  The Sixth Circuit has recognized that "[s]ome courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge."  *Daniels v. Burke*, 83 F.3d 760, 765 n. 4 (6th Cir. 1996) (citing cases); *see also Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001), *but cf. Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D. Mich. 2002) (relying upon double jeopardy case of *Price v. Georgia*, 398 U.S. 323, 331 (1970)).  In *Daniels*, however, the Sixth Circuit found it unnecessary to decide the issue in light of the fact that the evidence of first-degree murder was sufficient to submit that charge to the jury.  *Id*.

12

This Court need not resolve the matter because, as in *Daniels*, there was sufficient evidence of premeditation and deliberation to submit the first-degree murder charge to the jury. Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id.* The time interval may be minimal – merely seconds – depending upon the circumstances of the killing. *See People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975). Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Schollaert*, 194 Mich. App. at 170. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997). Use of a lethal weapon supports an inference of an intent to kill. *See People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

Applying the *Jackson* standard, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence to support the first-degree premeditated murder charge given the testimony that the victim was unarmed, that Petitioner shot him in the back of the head, and that Petitioner fled the scene and gave a false name upon arrest. The court further found that Petitioner had sufficient time to take a second look before shooting the victim and that proof of motive was not required. *See Hollis*, 2005 WL 356261 at * 3-4. This decision is neither contrary to Supreme

13

Court precedent nor an unreasonable application of the law or the facts. The testimony of the prosecution witnesses provided sufficient evidence to show that the victim was unarmed and did not provoke Petitioner at the time of the shooting, that Petitioner had time to consider his actions, that Petitioner shot the victim in the back of the head, and that Petitioner fled the scene and gave false identification to the police. Given such evidence, a reasonable fact-finder could have found that Petitioner acted with the intent to kill, that he had time to consider his lethal actions, and that he acted with sufficient premeditation and deliberation so as to justify the first-degree murder charge.[1] Habeas relief is not warranted on this claim.

### C. Failure to Produce a Witness/Admission of Prior Testimony

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to exercise due diligence to produce witness Stephanie Hart and the trial court erred in admitting her testimony from his first trial (which had resulted in a hung jury) at his second trial. The trial court allowed Hart's prior testimony to be read into the record following a due diligence hearing. Respondent contends that this claim lacks merit.

As an initial matter, the Court notes that to the extent that this claim is based upon a perceived violation of state law, it is not cognizable upon federal habeas review. The alleged failure to comply with state law does not amount to an actionable claim on habeas review. *See, e.g., Pulley v. Harris*, 465 U.S. 37, 41 (1984). The Court may grant a writ of habeas corpus only on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of

---

[1]Such evidence was also clearly sufficient to support Petitioner's second-degree murder conviction. *See* Mich. Comp. Laws § 750.317; *People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984) (second-degree murder requires proof of intent to kill, intent to commit great bodily harm, or intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result).

14

the United States."  28 U.S.C. § 2254(a); *Robinson v. Stegall*, 355 F.3d 916, 917 (6th Cir. 2004).

Petitioner, however, also argues that the admission of Stephanie Hart's testimony from his prior trial violated his rights under the Confrontation Clause of the United States Constitution.  In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the United States Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. The proper inquiry for deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005).  Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54.

The Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross-examination at the prior proceeding. *See Mattox v. United States*, 156 U.S. 237 (1895) (prior trial testimony); *Barber v. Page*, 390 U.S. 719, 725-26 (1968) (preliminary hearing testimony).  A witness is 'unavailable' for purposes of the exception to the confrontation requirement if the prosecution has made a good faith effort to obtain the witness's presence at trial. *See Barber*, 390 U.S. at 724-25; *Winn v. Renico*, 175 F. App'x 728, 733 (6th Cir. 2006).  "The lengths to which the prosecution must go to produce a witness, however, is a question of reasonableness." *Winn*, 175 F. App'x at 733 (citing *California v. Green*, 399 U.S. 149, 189, n. 22 (1970) (concurring opinion, citing *Barber*)).  "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness....The prosecution bears the burden of proof in this regard.

15

*Id.* (citations omitted).

Citing *Crawford*, as well as state cases explaining the due diligence requirement, the Michigan Court of Appeals denied relief on this claim. The court found that the authorities made a reasonable and good faith effort, *i.e.* exercised due diligence, to secure Stephanie Hart's presence at Petitioner's second trial, that she nonetheless did not appear, and that she was thus unavailable for that trial. The court further found that the defense had a full opportunity to cross-examine Hart at Petitioner's first trial and concluded that the trial court did not err in admitting Hart's prior testimony at his second trial. *See Hollis*, 2005 WL 356261 at *4-5.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. As explained by the Michigan Court of Appeals, the police made reasonable efforts to produce Stephanie Hart to testify at Petitioner's second trial. The record indicates that Officer Tyrone Kemp checked with utility companies and a neighbor, and verified Hart's last known address, went to that address on at least six occasions and at different times during the days and nights before the trial, spoke to Hart's father to ensure that she knew about the trial and that she was supposed to appear, and left a subpoena with her father at that address. Kemp also checked with jails, hospitals, and the morgue, but was unable to locate Hart. Other officers also attempted to serve Hart with a subpoena. Such efforts, although unsuccessful, were duly diligent. Hart was thus unavailable for purposes of Petitioner's second trial. The record further indicates that Petitioner had the same motive and opportunity for questioning Hart at his prior trial and that he took advantage of that opportunity. Consequently, because Hart was unavailable at the time of Petitioner's second trial and Petitioner had ample opportunity to cross-examine her at his first trial, the trial court did not violate his confrontation rights by admitting her prior testimony at trial. *See*

16

*Romans v. Berghuis*, No. 2:06-CV-11330, 2007 WL 4247607, *7 (E.D. Mich. Dec. 4, 2007)
(Duggan, J.) (finding no confrontation violation where witness was unavailable due to medical
problems and the trial court admitted her prior trial testimony).  Habeas relief is not warranted on
this claim.

### D.  Remaining Claims

Petitioner also asserts that he is entitled to habeas relief because the prosecutor withheld
exculpatory impeachment evidence (Stephanie Hart's police statement), the trial court limited his
cross-examination of Grenisha King, and trial counsel was ineffective for failing to properly
question several witnesses.  Respondent contends that these claims are barred by procedural default
and do not warrant habeas relief.

As discussed *supra*, federal habeas relief may be precluded on claims that a petitioner has
not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright*,
433 U.S. at 85-87.  The doctrine of procedural default is applicable when a petitioner fails to
comply with a state procedural rule, the rule is actually relied upon by the state courts, and the
procedural rule is "adequate and independent."  *White*, 431 F.3d at 524; *Howard*, 405 F.3d at 477.
For such a default to bar federal habeas review, the last state court rendering a judgment must
'clearly and expressly' state that its judgment rests on a state procedural bar.  *Harris*, 489 U.S. at
263; *see also Ylst*, 501 U.S. at 803-05.  If the last state judgment is a silent or unexplained denial,
it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Petitioner first presented these three claims to the state courts in his motion for relief from
judgment.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D),
which provides, in part, that a court may not grant relief to a defendant if the motion for relief from

17

judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Guilmette v. Howes*, _ F.3d _, 2010 WL 86339, *3 (6th Cir. Jan. 12, 2010) (relying on *Munson v. Kapture*, 384 F.3d 310 (6th Cir. 2004), and ruling that habeas petitioner's claim was procedurally defaulted because "although the state trial court on collateral review addressed the merits of [the] claim, both the state appellate and supreme courts denied the claim pursuant to Mich. Ct. R. 6.508(D)"); *Alexander v. Smith*, 311 F.3d 875, 883-84 (6th Cir. 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit).[2] In this case, the Michigan Supreme Court relied upon a clear state procedural default in denying relief on these claims.

      As noted, a state prisoner who fails to comply with a state's procedural rules waives the

---

[2]The state trial court denied relief from judgment because Petitioner failed to establish prejudice so as to satisfy the cause and prejudice requirement of Michigan Court Rule 6.508(D)(3). The Michigan Court of Appeals denied leave to appeal "for failure to establish entitlement to relief under MCR 6.508(D)."

right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85; *see also Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007).

In his original and supplemental habeas petitions, Petitioner neither alleges nor establishes cause to excuse this procedural default. In his reply brief, he asserts that his claim that the police withheld Stephanie Hart's police statement is based upon newly-discovered evidence and could not have been raised on direct appeal. He also asserts ineffective assistance of appellate counsel as cause to excuse his default in his reply brief. Parties generally waive issues in federal court when they are raised for the first time in reply briefs. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("[w]e will generally not hear issues raised for the first time in a reply brief").

Even considering Petitioner's arguments, however, the Court finds that he has not established cause to excuse his default. First, as to his newly-discovered evidence claim, Petitioner states that he first obtained Stephanie Hart's police report pursuant to a Freedom of Information Act request in September, 2004. Petitioner's direct appeal was pending before the Michigan Court of Appeals at that time. The Michigan Court of Appeals did not issue its decision until February 15, 2005. Petitioner could have moved to supplement his direct appeal, but did not do so. He could have also raised this claim before the Michigan Supreme Court and sought a remand, but did not do so. Petitioner has not shown that he was unable to present this claim on direct appeal of his convictions.

Moreover, there is some question as to whether Hart's police statement is actually "newly-

19

discovered" and/or was not disclosed to the defense at the time of Petitioner's first or second trial. As explained by the trial court in denying Petitioner's motion for relief from judgment, the record indicates that discovery was provided to defense counsel and there is no indication in the record that Hart's police statement was not included in that information. *See Hollis, supra*, slip op. at *13-14. Moreover, Officer Kemp referred to Hart's police statement while testifying at Petitioner's second trial. Petitioner was thus aware or should have been aware of Hart's police statements at the time of trial and his direct appeals. Petitioner has thus failed to establish cause to excuse his default.        Petitioner also asserts that appellate counsel was ineffective as cause to excuse his failure to raise these issues on direct appeal. Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient...[and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751

(1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal.  *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the three claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel presented legitimate and viable issues on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal habeas court need not address the issue of prejudice when a petitioner fails to

establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner's claims lack merit for the reasons stated by the trial court in denying his motion for relief from judgment. *See Hollis, supra*, slip op. at *5-14.[3]

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Such a claim of actual innocence requires a petitioner to present new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Actual innocence means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623. Petitioner has made no such showing. His withholding of evidence, limitation on cross-examination, and ineffective assistance of trial counsel claims are thus barred by procedural default, lack merit, and do not warrant relief from this Court.

## IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition, as amended. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

---

[3]The fact that the trial court denied relief on these claims, by finding no prejudice under Michigan Court Rule 6.508(D)(3), further supports the argument that appellate counsel was not ineffective for not raising the issues on direct appeal.

right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's

assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473,

484-85 (2000). "A petitioner satisfies this standard by demonstrating that...jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.

Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a

full merits review, but must limit its examination to a threshold inquiry into the underlying merit

of the claims. *Id*. at 336-37. When a court rejects a habeas claim on procedural grounds without

addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists

of reason would find it debatable whether the petitioner states a valid claim of the denial of a

constitutional right, and that jurists of reason would find it debatable whether the court was correct

in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that reasonable jurists would not find

the Court's procedural rulings debatable. The Court further concludes that Petitioner has failed to

make a substantial showing of the denial of a constitutional right as to his habeas claims.

Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** leave to

proceed *in forma pauperis* on appeal because any appeal would be frivolous. *See* Fed. R. App. P.

24(a).

**IT IS SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

23

Dated:  January 22, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 22, 2010.


s/Denise Goodine
Case Manager